IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOEL HOLLAND,<br><br>       Plaintiff,<br><br>  v.<br><br>WESTPORT INSURANCE CORPORATION,<br>CLAIMS MANAGEMENT SERVICES, INC., and<br>DOES 1-4,<br><br>       Defendants.<br>_____/ | No. C 04-1238 CW<br><br>ORDER GRANTING<br>DEFENDANTS' MOTION<br>FOR SUMMARY JUDGMENT<br>AND DENYING<br>DEFENDANTS' MOTION<br>TO MODIFY THE<br>ARBITRATOR'S AWARD |

    Defendants Westport Insurance Corporation and Claims Management Services, Inc. (CMS) move for summary judgment and to modify the arbitrator's award.  Plaintiff Noel Holland opposes the motions.  The matters were heard on May 3, 2007.  Having considered all of the papers filed by the parties, the evidence cited therein and oral argument on the motions, the Court grants Defendants' motion for summary judgment and denies their motion to modify the arbitrator's award.

BACKGROUND

    As stated in the Court's earlier orders, this case arises out of a February 20, 2003 auto collision in which Holland was driving a van insured by Westport under a policy obtained by Daytop

Village, Inc.  In October, 2003, Holland settled a claim against Allstate, the insurer of the third party driver who caused the accident, for the policy limit of $25,000.  Holland alleges that Westport owes him additional compensation pursuant to the provision of the insurance policy in which Westport promises to "pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.'"  First Amended Complaint (FAC) ¶ 12.  This provision is mandated by California Insurance Code § 11580.2.

Holland first informed Westport of the accident in February, 2003.  On October 23, 2003, after receiving the $25,000 settlement from Allstate, his attorney sent a letter to CMS, Westport's third party administrator, stating that he was filing an under-insured motorist claim for $1 million, the policy limit.  Addy Declaration, Exhibit 17.  CMS responded, requesting that Holland's attorney have Allstate contact it regarding subrogation so that it could initiate the under-insured motorist claim.  Addy Declaration, Exhibit 18.

On November 10, 2003, after receiving information from Allstate, CMS wrote again to Holland's attorney, indicating its belief that Westport was entitled to $5,000 in subrogation[1] and requesting "an open ended extension" to review the $1 million demand.  Addy Declaration, Exhibit 19.  Holland's attorney responded by stating that Holland would bring suit for bad faith against Westport unless it acceded to his demand before November

---

[1] Westport had paid $5,000 directly to the physical therapist treating Holland.

2

24, 2003.[2]  Addy Declaration, Exhibit 20.

On November 24, 2003, CMS responded, stating that it sought the extension because the parties still had not resolved whether Westport was entitled to subrogation. Addy Declaration, Exhibit 22.  Further, CMS pointed out that the medical receipts submitted by Holland totaled $12,030.21.  Id.  Because Holland had collected $25,000 from Allstate and the $5,000 physical therapy payment from Westport, CMS refused Holland's demand.  Id.  Nonetheless, CMS continued to investigate the claim.

On the same date that CMS denied the demand for $1 million, Westport offered to waive its right to subrogation and to give Holland an additional $5,000 to settle the claim.  Addy Declaration, Exhibit 23.  Its letter noted that Holland had been in another car accident on March 14, 2003, and that the only medical care he received after the accident at issue and before the second accident was during the initial trip to the emergency room.  Id.  Defendants state that Holland has not responded to the letter.

Westport also continued to investigate Holland's claim, arranging for independent medical evaluations with an orthopedist, an internist and a psychiatrist.  Addy Declaration, Exhibit 25.  Defendants state that Holland attended his appointment with the orthopedist, but failed to keep the other two appointments.  Holland contends that this is false and that Defendants rescheduled the other two appointments without informing him of the change.

---

[2] This date was based on Holland's attorney's assertion that the under-insured motorist claim had been received by CMS on October 14, 2003 and that California law requires a final decision on a claim within forty days.

3

Even if this is true, Holland provides no evidence that he attempted to reschedule those appointments.

Holland filed this action on February 20, 2004, alleging that Defendants failed properly to investigate his claim, to communicate with him about the status of his claim, and to pay the claim. The FAC asserts four causes of action: (1) breach of contract against Westport; (2) breach of the covenant of good faith and fair dealing against Westport and CMS; (3) intentional infliction of emotional distress against Westport and CMS; and (4) negligent infliction of emotional distress against Westport and CMS.

CMS and Westport moved to dismiss the FAC. On June 21, 2004, the Court dismissed Holland's bad faith claim against CMS, but otherwise denied Defendants' motion. The Court also found that the parties were required first to arbitrate the benefit amount dispute pursuant to Insurance Code § 11580.2(f). Rather than dismiss the case, the Court exercised its discretion to stay Holland's other claims while Holland pursued arbitration. Holland attempted to appeal the Court's order. After the appeal was denied, the matter proceeded to arbitration.

On July 27, 2006, the arbitrator awarded $39,100.71 to Holland but found that Allstate had already paid him $20,000. Therefore, the arbitrator found Westport liable for $19,100.71.

On August 9, 2006, Holland filed notice that he intended to proceed with the claims remaining in the FAC for bad faith and intentional and negligent infliction of emotional distress. Defendants have answered and now move for summary judgment.

4

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods. Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

5

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Id.

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.  Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation.  Nissan, 210 F.3d at 1105.  If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists.  Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition.  Id. This is true even though the non-moving party bears the ultimate

6

1  burden of persuasion at trial.  Id. at 1107.

2  Where the moving party bears the burden of proof on an issue
3  at trial, it must, in order to discharge its burden of showing that
4  no genuine issue of material fact remains, make a prima facie
5  showing in support of its position on that issue.  UA Local 343 v.
6  Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1994).  That
7  is, the moving party must present evidence that, if uncontroverted
8  at trial, would entitle it to prevail on that issue.  Id.; see also
9  Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th
10  Cir. 1991).  Once it has done so, the non-moving party must set
11  forth specific facts controverting the moving party's prima facie
12  case.  UA Local 343, 48 F.3d at 1471.  The non-moving party's
13  "burden of contradicting [the moving party's] evidence is not
14  negligible."  Id.  This standard does not change merely because
15  resolution of the relevant issue is "highly fact specific."  Id.

16                              DISCUSSION

17  I.   Bad Faith

18  Westport moves for summary judgment on Holland's claim for
19  breach of the implied covenant of good faith and fair dealing,
20  arguing that Plaintiff cannot establish that it unreasonably
21  withheld policy benefits.

22  A covenant of good faith and fair dealing is implied in every
23  insurance contract.  Egan v. Mutual of Omaha Insurance Co., 24 Cal.
24  3d 809, 818 (1979), cert. denied, 445 U.S. 912 (1980); see also,
25  Gourley v. State Farm Mutual Auto. Insurance Co., 53 Cal. 3d 121,
26  127 (1991).  "An insurer, like any other party to a contract, owes
27  a general duty of good faith and fair dealing. . . . There are at

28                                  7

least two separate requirements to establish breach of the implied covenant: (1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." Love v. Fire Ins. Exch., 221 Cal. App. 3d 1136, 1147, 1152 (1990).

Under California law, "The mistaken or erroneous withholding of policy benefits, if reasonable or if based on a legitimate dispute as to the insurer's liability under California law, does not expose the insurer to bad faith liability." Chateau Chamberay Homeowners Ass'n v. Assoc. Int'l Ins. Co., 90 Cal. App. 4th 335, 346 (2001) (internal quotation omitted). Further, even if an arbitrator later awards a greater amount than the insurer offered, the amount of that award in comparison to the amount demanded by the insured can establish a lack of bad faith as a matter of law. See Rappaport-Scott v. Interinsurance Exch. of the Auto. Club, 146 Cal. App. 4th 831, 839 (2007).

Here, the arbitrator valued Holland's loss at $39,000, which it then offset by $20,000 for the settlement with the third party's insurance company. The $19,000 liability the arbitrator attributed to Westport was significantly less than the $1 million Holland demanded.[3] This difference is far greater than the difference between the arbitrator's finding of $63,000 in actual losses and

---

[3] In his opposition, Holland suggests that the $1 million demand was merely a starting point for negotiations, which "was subject to reduction based on medical evidence produced by Defendants which they failed to investigate and produce." Plaintiff's Opposition at 13. However, he produces no evidence to support this assertion. Further, although insurance companies have a duty to investigate claims, they do not bear the burden of producing medical evidence.

8

the insured's claim of $346,732.34 in losses that the <u>Rappaport-Scott</u> court held "demonstrates, <u>as a matter of law</u>, that a genuine dispute existed as to the amount payable on the claim." <u>Id.</u> at 839 (emphasis in original). Holland's attempt to distinguish <u>Rappaport-Scott</u> by stating that "there were no issues of lack of serious medical investigation" in that case is both unconvincing and factually inaccurate. Plaintiff's Opposition at 13. The <u>Rappaport-Scott</u> court does not provide any information regarding the underlying dispute leading up to arbitration and does not rely on those facts to reach its holding. Further, as stated in the Court's earlier orders, Holland's assertion that Westport failed adequately to investigate his claim before denying it is inaccurate. Westport denied Holland's demand for $1 million, offered to settle the claim for $10,000 and continued to investigate his claim up until the date he filed this case.

The Court finds that there was a legitimate dispute as to the extent of Westport's liability. Therefore, the Court grants Westport's motion for summary judgment on the bad faith claim.

II. Intentional Infliction of Emotional Distress

Defendants also move for summary judgment on Holland's claim for intentional infliction of emotional distress (IIED) because Plaintiff cannot establish extreme or outrageous conduct.

The elements of a cause of action for IIED are: (1) extreme and outrageous conduct (2) intended to cause or done in reckless disregard for causing (3) severe emotional distress and, (4) actual and proximate causation. <u>See</u> <u>Cervantez v. J.C. Penney Co., Inc.</u>, 24 Cal. 3d 579, 593 (1979). The conduct must be so extreme as to

9

1  "exceed all bounds of that usually tolerated in a civilized
2  community," id., and the distress so severe "that no reasonable
3  [person] in a civilized society should be expected to endure it."
4  Fletcher v. Western Nat. Life Ins. Co., 10 Cal. App. 3d 376, 397
5  (1970).

6      Defendants' denial of Plaintiff's $1 million demand is not
7  outrageous conduct.  "The good faith denial of insurance benefits
8  does not amount to extreme conduct that exceeds all bounds of
9  civility."  Paulson v. State Farm Mut. Auto. Ins. Co., 867 F. Supp.
10 911, 919 (C.D. Cal. 1994), citing Ricard v. Pacific Indemnity Co.,
11 132 Cal. App. 3d 886, 894-95 (1982); Beckham v. Safeco Ins. Co. of
12 America, 691 F.2d 898, 904 (9th Cir. 1982).  Further, as Defendants
13 point out, Holland has provided no evidence of any emotional
14 distress caused by the denial of his demand.  The Court grants
15 Defendants' motion for summary judgment on the IIED claim.
16 III. Negligent Infliction of Emotional Distress

17     Finally, Defendants move for summary judgment on Holland's
18 negligent infliction of emotion distress claim (NIED).  Under
19 California law, NIED "is not an independent tort, but the tort of
20 negligence.  The traditional elements of duty, breach of duty,
21 causation, and damages apply."  Burgess v. Superior Court, 2 Cal.
22 4th 1064, 1072 (1992).  Further, California courts have held,
23 "Damages for emotional suffering are allowed when the tortfeasor's
24 conduct, although negligent as a matter of law, contains elements
25 of intentional malfeasance or bad faith."  Quezada v. Hart, 67 Cal.
26 App. 3d 754, 761 (1977).  As stated above, the Court finds no
27 evidence to create a triable issue of fact regarding bad faith.

28

10

Further, as stated above, Holland has not provided any evidence of emotional distress.  Therefore, the Court grants Defendants' motion for summary judgment on the NIED claim.

IV.  Motion to Amend the Arbitration Award

Defendants also move to amend the arbitration award to clarify the award's statement that "Allstate Insurance Company has paid Plaintiff $20,000 toward these damages, for which Westport is entitled to a credit."  Defendants seek to clarify why Westport is entitled to this credit by adding language explaining that Holland settled with Allstate for $25,000, that Allstate paid $20,000 to Holland and $5,000 in medical pay subrogation to Westport, and therefore, that Westport was entitled to a $20,000 credit toward the damages awarded in arbitration.  Because Defendants concede that the arbitration award as currently drafted is not incorrect, the Court denies Defendants' motion to amend the award.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment and DENIES their motion to amend the arbitration award (Docket No. 134).  Judgment shall enter accordingly.  Each party shall bear its own costs.

IT IS SO ORDERED.

Dated: 5/17/07

CLAUDIA WILKEN
United States District Judge

11